ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 21 2011

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHARON CROMWELL,<br>Plaintiff. | § § § | |
| VS. | § § | ACTION NO. 4:10-CV-061-Y |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>Defendant. | § § § § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Sharon Cromwell ("Cromwell"), filed applications for Title II disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments under Title XVI on August 9, 2007, alleging a disability onset date of May 31, 2007.[1] (Transcript ("Tr.") 7.) After her application was denied initially and on reconsideration, Cromwell timely requested a hearing before an administrative law judge ("ALJ") and a hearing was held in Fort Worth, Texas before ALJ James Stephen Russell on March 17, 2009. (Tr. 7, 22-79.)

In her application, Cromwell claimed disability due to bone spurs and bunions in her feet, hammer toes, depression, rheumatoid arthritis in her feet, ankles, knees and right hip, diabetes and gout. (Tr. 144-50, 168.) On June 30, 2009, the ALJ issued a decision finding that she was not

---

[1] Cromwell's last insured date for Title II purposes is December 12, 2012, meaning that she must establish disability on or before that date in order to be entitled to a period of disability and DIB. (Tr. 9); 42 U.S.C. §§ 416(i)(3) and 423(c)(1).

disabled. (Tr. 7-17.) On December 2, 2009, the Appeals Council denied Cromwell's request for review. (Tr. 1-3.) Cromwell subsequently filed the instant action in federal court on January 29, 2010. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.

Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of

performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUES

Cromwell presents the following issues:

1. Whether the ALJ properly evaluated Cromwell's somatoform disorder in his credibility, examining source and residual functional capacity ("RFC") findings; and

2. Whether the ALJ's determination that Cromwell is capable of sustained work is supported by substantial evidence.

(Plaintiff's Brief ("Pl. Br.") at 1.)

### IV. ADMINISTRATIVE RECORD

#### A. **Factual Background**

Cromwell was born on November 18, 1960. (Tr. 163.) She has a high school diploma and past relevant work experience as a housekeeper, orderly, cashier supervisor, cashier checker, laundry attendant, waitress and security guard. (Tr. 15-16, 26, 34, 72-75, 172.) Cromwell did not engage

in substantial gainful activity from her alleged onset date through the date of the ALJ's decision. (Tr. 9, citing 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*)

B. **Administrative Record**

At her hearing before the ALJ, Cromwell was represented by an attorney and testified on her own behalf. (Tr. 24.) An impartial vocational expert ("VE"), Todd Harden, also testified. (*Id.*) Cromwell testified that she was terminated from her last job as resident care attendant on May 17, 2007 because of "temper outbursts on the job," because she needed to sit down periodically, and because she was failing to complete her work in a timely manner. (Tr. 26-27.) Cromwell testified at length about her various alleged impairments. (Tr. 26-71.)

At the hearing, the ALJ then posed the following hypothetical to the VE:

> ...I want you to assume a person who has the same past relevant work experience as the Claimant. Also assume that that person in general can lift or carry up to 20 pounds occasionally, 10 pounds frequently, can sit for a total of 2 hours in an 8-hour – for two hours at a time for a total of 6 hours in an 8-hour day. She can stand without interruption for an hour at a time for a total of four hours in an eight-hour day, can walk without interruption for thirty minutes at a time for a total of three hours in an eight-hour day, and her total capacity to sit, stand and walk equals or exceeds eight hours. No limitation in her use of the hands or feet. She can occasionally climb stairs or ramps, no ladders, ropes, or scaffolds, frequently balance, frequently stoop, occasionally kneel, crouch, and crawl. She can perform activities like shopping, traveling without a companion for assistance, walking without using a wheelchair, walker, two canes, or two crutches, walking a block at a reasonable pace on rough or uneven surfaces, uses standard public transportation, climb a few steps at a reasonable pace with the use of a single handrail, prepare and consume a simple meal without assistance, care for her own hygiene, and sort, handle, and use paper files. She has – she can understand and recall simple instructions. She has a marked limitation in her ability to understand and remember instructions, but she can understand and recall simple instructions. She has a marked limitation in her ability to carry out instructions, but she can carry out simple instructions. She has moderate limitations in the following: ability to maintain attention, but she is okay for two-hour blocks of simple repetitive work. As far as special supervision she may require redirection three to four times per month. Coordinating with others without distraction she can tolerate occasional interacting contact with a small familiar group of coworkers, and she may require one to two let's say extra fifteen-minute rest periods weekly because of psychological interruptions. She can tolerate occasional interacting contact with supervisors and will generally conform to appropriate standards in the workplace.

(Tr. 76-77.) The ALJ then asked the VE whether such a person could return to any of the past work that the VE had described. (Tr. 77.) The VE responded no. (Tr. 78.) The ALJ then proceeded to

step five and asked the VE whether there was any other work that exists in substantial numbers that such a person could perform. (*Id.*) The VE identified three jobs, including production assembler, with a specific vocational preparation ("SVP")[2] level of two, classified as light work, with 50,000 jobs in the national economy and 4,000 jobs in Texas. (*Id.*) He also identified an injection molding machine tender, with an SVP of two, classified as light work, with 30,000 jobs in the national economy and 2,400 jobs in Texas. (*Id.*) Finally, the VE identified a small products assembler, also with an SVP of two and classified as light work, with 100,000 nationally and 8,000 in Texas. (*Id.*) Cromwell's attorney chose not to question the VE on his testimony. (Tr. 79.)

C. **The ALJ's Decision**

In making his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 7-17.) At step one, the ALJ found that Cromwell meets the disability insured status requirements of the Social Security Act through December 31, 2012. (Tr. 9.) He also found that she had not engaged in substantial gainful activity since May 31, 2007, her alleged onset date. (*Id.*, citing 20 C.F.R. § 404.1571 *et seq.* and 416.971 *et seq.*)

At step two, the ALJ determined that Cromwell had the severe impairments of osteoarthritis, plantar fasciitis, mood disorder, somatoform disorder and personality disorder. (*Id.*, citing 20 C.F.R. § 404.1520(c) and 416.920(c).) The ALJ continued to step three, finding that Cromwell did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr. 10, citing 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §404.1525, 404.1526, 416.925 and 416.926.) The ALJ found that Cromwell's subjective complaints were not fully credible. (Tr. 12.) He determined that Cromwell had the following RFC:

---

[2] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See Dictionary of Occupational Titles* app. C (rev. 4th ed.1991). Unskilled work usually requires less than thirty days of training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and skilled work requires an SVP level of 5 or higher. Social Security Ruling 00-4p; *see also generally* 20 C.F.R. §§ 404.1568, 416.968.

...to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she cannot stand for more than 1 hour for a total of 4 hours; cannot walk without interruption for more than 30 minutes for a total of 3 hours; cannot climb ladders, ropes or scaffolds ever; climb stairs or ramps, kneel, crouch or crawl more than occasionally; cannot understand, recall or carry out other than simple instructions; cannot maintain attention and concentration for 2-hour blocks of other than simple repetitive work; cannot focus on her work without additional re-direction 3-4 times per month; cannot tolerate more than occasional interaction with small familiar groups; cannot complete a workweek without 1-2 extra rest periods monthly; and cannot tolerate more than occasional interacting contact with supervisors.

(*Id.*)

At step four, the ALJ determined that Cromwell was unable to perform any of her past relevant work. (Tr. 15, citing 20 C.F.R. § 404.1565 and 416.965.) Then at step five the ALJ found that, given Cromwell's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform. (Tr. 16, citing 20 C.F.R. § 404.1569, 4-4.1569a, 416.969, and 416.969a.) Ultimately, the ALJ concluded that Cromwell was not disabled within the meaning of the Act at any time from her alleged date of onset through the date of the decision. (Tr. 17, citing 20 C.F.R. § 404.1520(g) and 416.920(g).)

## V. DISCUSSION

### A. Whether the ALJ properly evaluated Cromwell's somatoform disorder in his credibility, examining source and RFC findings.

Cromwell first asserts that the ALJ failed to properly evaluate her somatoform disorder in his credibility, examining source and RFC findings. (Pl. Br. at 9-15.) She claims that although the ALJ found her somatoform disorder severe, he "failed to consider whether [her] pain and other physical symptoms, not attributable to physical impairments, were caused by somatoform disorder." (*Id.*) To support her position, Cromwell cites to *Scott v. Shalala*, 43 F.3d 669, 1994 WL 725034 (5th Cir. Dec. 19, 1994) (Not selected for publication in Federal Reporter) and *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994). (Pl. Br. at 9-10.)

In *Scott*, unlike the present case, the ALJ failed to identify somatoform disorder as a severe impairment of the claimant at step two. 1994 WL 725034, at *3. The Fifth Circuit Court of Appeals concluded that the ALJ in *Scott* misapplied the relevant legal standards in evaluating

whether the claimant suffered from a somatoform disorder. *Id.* Moreover, the treating psychologist and other treating physicians in *Scott* made numerous references to the claimant's functional overlay, providing further evidence that such a disorder existed. *Id.* In Cromwell's case, however, with significantly less evidence of a somatoform disorder than in the *Scott* case, the ALJ in the instant case found that Cromwell suffered from a severe impairment of a somatoform disorder at step two. (Tr. 9.)

In *Latham*, the Court of Appeals commented that "[w]hen medical findings do not substantiate the existence of physical impairments capable of producing alleged pain and other symptoms, the ALJ must investigate the possibility that a mental impairment is the basis of the symptoms." 36 F.3d at 484, (citing 20 C.F.R. § 404.1529(b)). The Court noted that "[t]he basic feature of somatoform disorders is the presence of physical symptoms for which there are no demonstrable organic findings," but that the ALJ in question "did not investigate the possibility that [the claimant's] pain and symptoms existed as a result of the disorder." *Id.* As explained below, the Court finds that the ALJ properly considered Cromwell's somatoform disorder in coming to his decision.

### 1. Credibility

First, Cromwell claims that the ALJ failed to properly evaluate her credibility. (Pl. Br. at 10-11.) Specifically, she contends that the ALJ failed to consider the entire record in making his credibility findings. (*Id.*)

An ALJ is not required to give subjective evidence precedence over objective evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (citations omitted). Rather, the ALJ's evaluation of the credibility of an individual's complaints of pain is used to resolve conflicts between the subjective evidence and the medical evidence. *Id.* The record is clear that the ALJ considered findings from medical examinations as well as Cromwell's own reports of her daily activities in determining that her subjective complaints were not credible to the extent she claimed. (Tr. 10-13.) Thus, he clearly indicated the credibility choices he made and the basis he used for making those

choices. *See Hollis*, 837 F.2d at 1385; *see also* 20 C.F.R. § 404.1529 (ALJ will consider the extent to which claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence); Social Security Ruling 96-7p (discussing factors used in credibility determination).

There is substantial evidence in the record to support his choice to credit the medical records over Cromwell's subjective testimony, including mental status examinations showing that she was "feeling great" and "doing well" when on medication; and (2) the fact that Cromwell was able to take care of her disabled mother on a daily basis. (Tr. 14, 69-71, 284, 286, 302.) The ALJ specifically noted that the medical records indicated when Cromwell took her medication that her mental symptoms were well-controlled. (Tr. 14, 284, 286, 302.) It is well-settled that conditions controlled by medication or therapy cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

The ALJ explained that he considered and evaluated all of Cromwell's pain symptoms in accordance with the requirements of 20 C.F.R. §§ 404.1529, 416.929 and Social Security Rulings 96-4p and 96-7p. (Tr. 12.) He also indicated that he took her pain into account in formulating an RFC assessment. (Tr. 13.) But the medical evidence simply does not support Cromwell's allegations of pain. (*See, e.g.*, Tr. 13-14, 234, 281-82.)

The ALJ also considered Cromwell's daily activities in assessing her credibility. *See Leggett v. Chater*, 67 F.3d 558, 565, n. 12 (5th Cir. 1995) ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status.") For instance, Cromwell reported that she lived with and cared for her disabled sister, did the laundry, drove by herself to the grocery store and to doctors' appointments, cared for two pets, and wrote in her journal on a daily basis. (Tr. 11, 13, 33, 35-36, 41, 43-44, 46-48, 176, 178, 180, 204-04, 284.) The evidence also showed that Cromwell had cared for her mother on a daily basis for the past six years and that she had helped her brother with his rehabilitative therapy. (Tr. 11, 13, 15, 32, 35-37, 175, 180, 204-05, 284.) An ALJ may discredit subjective complaints in light of contradictory medical reports or daily

activities. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). Thus the ALJ's determination that Cromwell's daily activities discredited her allegations of disabling impairments is supported by substantial evidence. *See, e.g., Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (noting that the claimant engaged in a variety of activities, including bathing herself, preparing food, and operating a vehicle).

### 2. RFC Assessment

Cromwell next claims that the ALJ failed to adequately consider her somatoform disorder in his RFC assessment. (Pl. Br. at 13-15.) A review of the ALJ's opinion, however, reveals that he gave thorough consideration to the evidence in its entirety, including Cromwell's allegations of pain. He placed significant limitations on the work she was capable of performing by limiting her to light, rather than medium or heavy work. (Tr. 12.) He also placed numerous additional physical limitations on her, including limiting the amount of time she could stand and walk, prohibiting her from climbing ladders, ropes or scaffolds, and limiting her to only occasionally climbing stairs or ramps or kneeling, crouching, or crawling. (*Id.*) He took her mental limitations into account by including a limitation to maintaining attention and concentration for 2-hour blocks of time other than simple repetitive work, and adding that she would need additional redirection 3-4 times per month. (*Id.*) Finally, he accommodated her anger management problems by limiting her to only occasional interaction with small familiar groups, and requiring an extra 1-2 rest periods monthly, and limiting her to only occasional contact with supervisors. (*Id.*) The Court finds that the ALJ properly considered Cromwell's somatoform disorder in his RFC determination and that it is supported by substantial evidence.

### 3. Evaluation of the Consultative Examiner's Opinion

Finally, Cromwell claims that the ALJ failed to appropriately evaluate the opinion of examining physician Dr. Robert Lovitt ("Lovitt"). The ALJ acknowledged Lovitt's 2008 consultative psychological examination wherein Lovitt assessed a global assessment of functioning

("GAF")[3] [4] score of 36 secondary to bipolar disorder and stated that Cromwell's ability to concentrate and persist was probably "quite poor" on a day-to-day basis. (Tr. 15, 241.) The ALJ declined, however, to give controlling weight to Lovitt's opinion because of a lack of corroboration from objective medical evidence and because there were inconsistencies between Lovitt's examination results and those of Cromwell's treating psychiatrists. *Id.* An ALJ is free to reject all or portions of a physician's opinion when the overall evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (th Cir. 1995) (citations omitted).

Examinations by Cromwell's treating psychiatrist in late 2008 showed mild to moderate findings and also noted that Cromwell had been out of her medication for two weeks and that she was non-compliant with her medication. (Tr. 290-92, 295, 298-99, 302-03, 305-07, 310-11, 322-23.) By January 2009, however, Cromwell's treating psychiatrist noted that she was "doing well" with her medications, that she was "feeling great," and that she was helping care for her mother, brother and sisters. (Tr. 14, 284, 286, 302.) She was assigned a GAF score of 65.[5] The evidence in Cromwell's medical record consistently indicates that her symptoms were well-controlled with medication. (Tr. 14, 284, 286, 302.)

With regard to Lovitt's assessment of a GAF score of 36 for Cromwell, federal courts have declined to find a correlation between an individual's GAF score and the ability or inability to work. *See* 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (Commissioner declines to endorse the GAF scale for use in Social Security and SSI disability programs, and states that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). *See, e.g.,*

---

[3] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational Functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 32 (4th ed. 1994).

[4] A GAF score of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 34.

[5] A GAF score of 61 to 70 reflects some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful relationships. DSM-IV at 34.

*Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir.2007); *Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir.2005); *Glover v. Massanari*, 2001 WL 1112351, at *7 (N.D. Tex. Sept.14, 2001). The Court finds that, in light of the other evidence in the record, the ALJ's failure to accept Lovitt's GAF assessment is not unwarranted nor is it irrefutable evidence that the ALJ's decision is erroneous or unsupported. The Court finds that the ALJ properly evaluated Lovitt's opinion.

### B. Whether the ALJ's determination that Cromwell is capable of sustained work is supported by substantial evidence

Cromwell's last point on appeal is her allegation that the ALJ's determination that she was capable of sustained work is not supported by substantial evidence. (Pl. Br. at 15-19.) According to Cromwell, the ALJ failed to identify any evidence to support his conclusion at step five that she could sustain employment for eight hours a day. (*Id.*) The ALJ relied on the testimony of the VE to find that Cromwell could perform work that exists in significant numbers in the national economy, including work as a production assembler, as a injection molding machine tender, and as a small products assembler. (Tr. 16-17.) Cromwell claims that she is not capable of working on a "regular and continuing" basis because of the limitations and restrictions imposed by all of her impairments. (Pl. Br. at 18.) But the evidence does not support Cromwell's allegations of inability to sustain work activity.

First, the medical record does not corroborate her allegations of a waxing and waning disabling somatoform disorder, nor does it corroborate her allegations of disabling pain. (Pl. Br. at 15-17.) There is no evidence corroborating Cromwell's allegations of intermittent periods of incapacity. Rather, medical records reveal that she had good range of motion in her ankles and heels and that she could ambulate effectively without any assistive devices. (Tr. 13-14, 233-34.) And, as explained previously, the ALJ properly accommodated for the limitations which the records do support in his RFC findings. (Tr. 12.)

Cromwell also alleges that she cannot work on a sustained basis because she "frequently visits the doctor for appointments and examinations." (Pl. Br. at 17, citing *Bennette v. Astrue*, 2009

WL 840216, *4 (W.D. La. Mar. 27, 2009) and *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).) But Cromwell's medical history does not substantiate her claims. In *Bennette*, the first case she cites in support, the claimant had "well over" 18 medical examinations and appointments in addition to multiple emergency room visits in one year. 2009 WL 840216, at *4. In *Newton*, the claimant was hospitalized several times, had nine visits to the emergency room, and also had numerous office visits. 209 F.3d at 459. Cromwell, on the other hand, had a single main appointment along with a follow-up for her toe in 2006. (Tr. 221-22.) The next year, she had a single scheduled consultative examination in connection with her disability application. (Tr. 232-35.) In 2008 her visits increased, but the records show that seven of those were regularly scheduled visits to the JPS Department of Psychiatry. (Tr. 288-325.) She also had six to seven additional visits that year, about every two months, for bone density testing, plantar fasciitis, diabetes and osteoporosis. (Tr. 263.) In 2009, there is evidence of only one appointment. (Tr. 284-87.) Moreover, there is no indication that Cromwell has ever been hospitalized for her condition. The evidence does not show that Cromwell's medical visits would significantly interrupt her ability to perform a normal eight-hour work day on a sustained basis.

Significantly, none of Cromwell's treating physicians ever opined that she was disabled by her impairments. The Fifth Circuit Court of Appeals has held that an ALJ's determination of nondisability is supported when no physician of record states that the claimant is disabled. *Vaughn v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995). Moreover, medical records indicate that her condition was well-controlled with medication. (Tr. 14, 284, 286.) And the evidence of Cromwell's daily activities also belie her assertions of disability, as she has taken care of her mother on a daily basis for the past six years, and she has also helped her brother with rehabilitative therapy, as well as helped care for her disabled sister. (Tr. 11, 13, 15, 32-33, 35-37, 47, 175-76, 180, 204-05, 284.) In sum, the Court finds that there is substantial evidence supporting the ALJ's step five determination.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. Thus the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation is **February 4, 2011**. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **February 4, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**January 21, 2011**

                                                         JEFFREY L. CURETON
                                                         UNITED STATES MAGISTRATE JUDGE

JLC/cak